```
1                IN THE UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF ILLINOIS
2                        EASTERN DIVISION

3
   UNITED STATES OF AMERICA,      ) Docket No. 17 CR 173
4                                 )
         Government,              )
5                                 ) Chicago, Illinois
              vs.                 ) February 5, 2019
6                                 ) 1:00 o'clock p.m.
   ANTHONY WILLIAMS (1), TYRONE   )
7  HUNTER (2), DEMETRIUS YANCY (4),)
   RICKY BROOKS (5), JEROME       )
8  CHOICE (6), and SIR CHARLES    )
   BLAND (8),                     )
9                                 )
         Defendants.             )
10

11          TRANSCRIPT OF PROCEEDINGS - Status/Motion
            BEFORE THE HONORABLE JOHN ROBERT BLAKEY
12

13
   APPEARANCES:
14 For the Government:       UNITED STATES ATTORNEY'S OFFICE
                             BY:  MS. NANI GILKERSON
15                           219 South Dearborn Street
                             Suite 500
16                           Chicago, Illinois  60604

17 For Defendant Williams: THE LAW OFFICE OF MICHAEL WALSH
                             BY:  MR. MICHAEL D. WALSH
18                           P.O. Box 120
                             Western Springs, Illinois  60558
19
   For Defendant Hunter:    RONALD J. CLARK AND ASSOCIATES
20                           BY:  MR. RONALD J. CLARK
                             900 West Jackson Boulevard
21                           Suite 5W
                             Chicago, Illinois  60507
22

23               Laura LaCien, CSR, RMR, CRR
                     Official Court Reporter
24         219 South Dearborn Street, Suite 1212
                   Chicago, Illinois  60604
25                      (312) 408-5032
```

```
1

2   APPEARANCES:  (Cont'd)

3

4   For Defendant Yancy:      PISSETZKY & BERLINER
                              BY:  MR. GAL PISSETZKY
                              35 West Wacker Drive
5                             Suite 1980
                              Chicago, Illinois  60601
6
    For Defendant Brooks:     BLAINE & VANZANT LLP
7                             BY:  MS. HOLLY N. BLAINE
                              922 Davis Street
8                             Evanston, Illinois  60201

9   For Defendant Choice:     PISSETZKY & BERLINER
                              BY:  MR. GAL PISSETZKY
10                            35 West Wacker Drive
                              Suite 1980
11                            Chicago, Illinois  60601

12  For Defendant Bland:      THE LAW OFFICE OF JOSH M. FRIEDMAN
                              BY:  MR. JOSH M. FRIEDMAN
13                            53 West Jackson Boulevard
                              Suite 1028
14                            Chicago, Illinois  60604

15

16  Also Present:             U.S. PRETRIAL SERVICES
                              BY:  MS. CARLA TRAMONTE
17                            219 South Dearborn Street
                              Room 15100
18                            Chicago, Illinois  60604

19

20

21

22

23

24

25
```

1    (The following proceedings were had in open court:)

2         COURTROOM DEPUTY:  17 CR 173-1, 2, 4, 5, 6 and 8,

3  USA versus Williams, Hunter, Yancy, Brooks, Choice and

4  Bland.

5         THE COURT:  All right.  I'm going to ask that

6  appearances is done a little bit slower than normal so I can

7  make sure I've checked everything out.  Counsel for the

8  government?

9         MS. GILKERSON:  Good afternoon, your Honor.  Nani

10  Gilkerson on behalf of the United States.

11         THE COURT:  All right.  As to Mr. Williams?

12         MR. WALSH:  Yes, your Honor.  Michael Walsh on

13  behalf of Mr. Williams.

14         THE COURT:  As to Mr. Hunter?

15         MR. CLARK:  Yes.  Ronald Clark, your Honor.

16         THE COURT:  Okay.  Mr. Calvin Williams?  He's not

17  up?

18         MS. GILKERSON:  He's plead guilty, your Honor.

19         THE COURT:  All right.  He's not up today.

20         MS. GILKERSON:  I think it's just Jerome Choice.

21         THE COURT:  Mr. Yancy?

22         MR. PISSETZKY:  Yes, your Honor.  Good afternoon.

23  Gal Pissetzky for Mr. Yancy.

24         THE COURT:  Okay.  Is Mr. Brooks up today?

25         MS. BLAINE:  Yes.  He is, your Honor.  Holly Blaine

1    on behalf of Mr. Brooks.

2          THE COURT:  All right.  Thank you.  Mr. Choice, is

3    he up today?

4          MR. PISSETZKY:  Yes, your Honor; and I'm stepping in

5    for Mr. Michael Schmiege who is representing Mr. Choice.

6          THE COURT:  Okay.  Did he give you all of his trial

7    information?

8          MR. PISSETZKY:  I'm not sure if he gave me all the

9    trial information.

10          THE COURT:  All right.  Let me check to see if --

11    hang on one second.

12          MR. FRIEDMAN:  Your Honor, if I may, I'm here on

13    behalf of Mr. Bland.

14          THE COURT:  Hang on one second, counsel.

15          MR. FRIEDMAN:  Okay.

16       (Brief pause.)

17          THE COURT:  Okay.  Yes, counsel.  I interrupted you.

18    Go ahead.

19          MR. FRIEDMAN:  I'm sorry.  I'm here on behalf of

20    Mr. Bland who is in custody but his appearance has been

21    waived.

22          THE COURT:  Okay.

23          MR. FRIEDMAN:  Thank you.  Oh, I'm sorry.  Josh

24    Friedman.

25          THE COURT:  And then as to Mr. -- is Mr. Atkins

1   Williams, is he up today?

2          MS. GILKERSON:  He is up on Thursday.

3          THE COURT:  He's up on Thursday, okay.  And then

4   Mr. Terrance Brooks, is he up today?

5          MS. GILKERSON:  No.  He has pled guilty and been

6   sentenced.

7          MR. PISSETZKY:  He's already off.

8          THE COURT:  Okay.  Sorry about that.  Just need to

9   keep up-to-date with this.

10         Okay.  All right.  Counsel, can you -- there was

11  obviously a trial date that we have set.  Government, what's

12  your -- I know what your estimate was then.  Has your

13  estimate changed in terms of length?

14         MS. GILKERSON:  I think right now it's still at

15  least three weeks.

16         THE COURT:  And our starting date is when exactly?

17         MS. GILKERSON:  Right now based upon the last court

18  hearing July 29th.

19         THE COURT:  What's the defense counsel and -- this

20  is a collective question.  There was a concern about -- I

21  believe it was Judge Durkin's RICO case.  My understanding is

22  that that's moved.

23         MR. PISSETZKY:  I'm sorry.

24         THE COURT:  Yeah, why don't you give me an idea of

25  where we're going with that.

1    MR. PISSETZKY:  And I know that Mr. Schmiege is on

2  that trial as well, your Honor.  The trial has not

3  technically been moved yet.  The trial has been moved for the

4  death-eligible defendants.  They're going to pick a new trial

5  date next week on the 11th.

6    As far as the non-death eligible defendants, who I

7  have one and Mr. Schmiege has one, the trial actually has not

8  been moved and we do not know if Judge Durkin is going to

9  sever the trials and leave our trial on the same date in

10  September or we're going to get a whole new date regardless.

11  And that is -- you know, I tried to email everybody as soon

12  as I heard that to see if we can postpone this hearing until

13  next week but it didn't really quite work.  So I will not

14  know until Monday next week.

15    THE COURT:  What's the -- I know there was some

16  issues about moving the trial date up.  Was that your

17  schedule?

18    MS. BLAINE:  Correct.  My trial partner is not

19  available until July 29th.  He has another trial down in the

20  Northern District of Indiana so he'll be finishing up that

21  last week of July on the 22nd so he'll also be in Indiana.

22    THE COURT:  All right.  What about moving the trial

23  up substantially?  Is that a possibility?

24    MS. BLAINE:  My trial partner has basically

25  scheduled back-to-back trials.  He has the Latin Kings trial

1   in front of --

2           THE COURT:  From February to the end of July, he has

3   back-to-back trials?

4           MS. BLAINE:  Yeah.  He has the trial scheduled in

5   front of Judge Kendall, the Latin Kings trial, starting March

6   4th so he's going into preparations for that trial.

7           THE COURT:  All right.  Anyone else want to weigh

8   in?

9           MR. PISSETZKY:  Your Honor, all I can say is that I

10  will definitely know next week that -- if my trial is gone;

11  and if it's gone, we can keep this trial the way it is.

12          THE COURT:  All right.  And is that true for Mr.

13  Schmiege?

14          MR. PISSETZKY:  Yes.

15          THE COURT:  All right.  Do defense counsel believe

16  that it will be resolved in three weeks starting on July

17  29th?  Because the last week of August, I have conflicts

18  which means if this case runs long, it's -- we're going to

19  get into a problem also.

20          So obviously, I know it's hard to gauge but I don't

21  know -- and I'm not asking any defense theories or anything

22  else.  I'm just trying to make sure that the -- especially

23  with a criminal case, both sides, their trial estimates are a

24  little bit in the dark.  The government doesn't know how

25  vigorous the cross is going to be, whether or not there's a

1  defense case, whether or not they need rebuttal and obviously

2  the -- and despite Rule 16 and constitutional disclosures,

3  the defense is always not exactly sure what the government's

4  case looks like until they see it.  But does everyone believe

5  that if we start on July 29th, it will conclude with

6  deliberations in three weeks?

7           MR. PISSETZKY:  Here's my main concern, your Honor,

8  the government said at least three weeks and I think they

9  used the word at least because it's a conservative estimate

10  so -- and knowing myself at least on how I cross examine --

11  and you're smiling because you know that as well -- three

12  weeks may turn into four or five real quick.

13           THE COURT:  Anybody else want to weigh in?  Because

14  obviously it's a lot of planets to get aligned; and if

15  this is not a workable date, everybody needs to know in

16  advance because everybody's trial calendars fill up.  And

17  then if we have to move it, then it ends up getting farther

18  out and I have defendants in custody so they need to have a

19  trial.

20           So anyone else want to weigh in?

21           MR. CLARK:  It just seems to me, Judge, to

22  paraphrase latter President Bush, you are the decider.

23           THE COURT:  All right.  Well, I'm going to keep the

24  July 29th date.  If the RICO trial as to the non-capital

25  defendants is moved, I'm hearing no objection that we can't

 1  get it done, then I'm going to tell the government you've got

 2  that window so you got to plan accordingly because you have

 3  more control over the length of the trial than anybody else.

 4          I will, of course, prevent redundant or

 5  inappropriate cross but I'm going to allow Sixth Amendment

 6  vigorous cross in any defense case consistent with process,

 7  et cetera, so.  But we're going to -- if we begin on July

 8  29th, which appears to be the earliest we could possibly do

 9  it, I think that's consistent with fairness to the defendants

10  who want a trial because they're in custody, so.

11          MS. GILKERSON:  Your Honor, when does your conflict

12  start?

13          THE COURT:  My conflict is the last week of August

14  so it would be --

15          MS. GILKERSON:  26th?

16          THE COURT:  -- 26th, 27th so I don't want

17  deliberations running into that week because that will cause

18  a problem so let's just sort of plan accordingly.  I can

19  give -- I have -- we get a lot of testimony in per day.  For

20  example, I'm on trial right now.  I have the civil call moved

21  up and getting over five hours of testimony a day and we run

22  it on Fridays, too.  That's all I can do.

23          All right.  Anything else with respect to the trial

24  date?  At this point, I don't know that I'm able to move it

25  because if we do move it, it would look like it would be

1   2020, right?

2       MR. PISSETZKY:  Well, if my trial -- if the RICO

3   trial goes away, we have no problem.  But if we have to move

4   it because of the RICO trial, then yes, it will be 2020.  My

5   question to you, the Court wants me to inform you about next

6   week as soon as I know?

7       THE COURT:  Yeah.  With permission from the

8   government and to contact chambers and for scheduling matter,

9   just let us know what Judge Durkin decides with respect to

10  both your client and Mr. Choice whose presence is waived

11  today.

12      Okay.  All right.  I know we have some other matters

13  to take up today.  Do you want to -- what do you want to do

14  first?

15      MR. CLARK:  Well, your Honor, I had a bond motion

16  that was -- that I'm not -- I need to get something else for

17  it and I wonder if we could put that off until next week.  Is

18  that a possibility?

19      THE COURT:  Okay.  Do you know -- what date did you

20  notice it -- you noticed it for today, right?

21      MR. CLARK:  Well, it was noticed last time the case

22  was up but it was only by a day and so you moved it until

23  today; yes.

24      THE COURT:  Okay.  And you -- when do we have this

25  case next up, Gloria?  I think we have Atkins up on the 7th

 1   but that's too soon, right, counsel?

 2           MR. CLARK:  That is too soon, your Honor.  7th is --

 3   the day after tomorrow.  I have -- I have something before

 4   your Honor on the 14th if we could do that.  At 1:00 I do,

 5   so.

 6           THE COURT:  All right.

 7           MR. CLARK:  It's just -- and all it is is a status

 8   as to whether I'm going to trial.

 9           THE COURT:  That's Mr. Hunter, correct?

10           MR. CLARK:  Mr. Hunter, yes.

11           THE COURT:  All right.  Gloria, do we have room on

12   the 14th for that?

13           COURTROOM DEPUTY:  We do but it would have to be at

14   2:00 p.m.

15           THE COURT:  We have a change of plea at 1:00?

16           COURTROOM DEPUTY:  We have naturalization.

17           THE COURT:  Oh.  That's not a good day because I got

18   trial and a naturalization ceremony.

19           MS. GILKERSON:  I have a conflict at 2:00 on that

20   day, too.

21           MR. CLARK:  On the 14th you're talking about?

22           THE COURT:  Yeah.  So what's another date that's

23   good for you, counsel?  What is that next week, Gloria?

24           MR. CLARK:  13th?

25           THE COURT:  You want to do it sooner, okay.  Gloria,

 1   look at sooner.

 2            COURTROOM DEPUTY:  We could do Thursday at 1:00 p.m.

 3            THE COURT:  Is that good for you, counsel?

 4            MR. CLARK:  Yes, your Honor.

 5            MS. GILKERSON:  That works for me, your Honor.

 6            THE COURT:  All right.  Does the government want to

 7   file a response on that?  I don't believe you filed one yet.

 8   It's up to you.  You can argue it orally also.

 9            MS. GILKERSON:  I'm happy to argue orally.

10            THE COURT:  All right.  The -- as to Tyrone Hunter,

11   motion to modify conditions of release, entered and continued

12   to 2-13 at 1:00 p.m. for hearing.

13            MS. GILKERSON:  Your Honor, just before we move on,

14   in the motion there are a couple of proposed -- new proposed

15   third-party custodians.  I'm wondering if it makes sense to

16   have defense counsel provide that information to Pretrial

17   Services so that they could supplement with any information

18   about those custodians.

19            MR. CLARK:  That's exactly why I -- that's exactly

20   why I asked that we continue it so because -- I did that but

21   during the delay, nobody kind of responded to me during when

22   the government was shut down.  So, yes, that's -- I --

23   that -- your Honor would want that so I need to do that; yes.

24            THE COURT:  Okay.  If it turns out that the -- that

25   continuance is not sufficient for the pretrial, please

1    contact my chambers and we will -- there we are.  Do you need
2    to make an appearance?
3              MS. TRAMONTE:  Good afternoon, your Honor.  Carla
4    Tramonte, Pretrial Services.
5              THE COURT:  Okay.
6              MS. TRAMONTE:  We were made aware of this motion
7    this morning actually by the AUSA.  I'm happy to do any
8    addendum you need for this --
9              THE COURT:  Do you have enough time if we have the
10   hearing on the 13th?
11             MS. TRAMONTE:  Yes, your Honor.  That would fine.
12             THE COURT:  All right.  Thank you so much.  It looks
13   like that will be -- that won't delay us if we keep that 2-13
14   date.  All right.  Do you want to address the Ricky Brooks'
15   motion today or --
16             MS. GILKERSON:  Yeah.  Can we just move to exclude
17   time as to Mr. Hunter as to --
18             MR. CLARK:  Yes; agreed.
19             THE COURT:  I believe we have time excluded through
20   and including trial already, right?
21             MS. GILKERSON:  Oh, we have -- You're right.  We do.
22             THE COURT:  We're okay --
23             MS. GILKERSON:  It's a matter of habit.
24             THE COURT:  We're okay on the speedy trial clock
25   right now.  All right.

1      MR. PISSETZKY:  Your Honor, do we have an interim

2  status day that you want to set?  I have to be in the Daley

3  Center.  I have a trial -- they're waiting for me over there

4  and I was wondering if I can be excused if we're setting a --

5  if we set a --

6      THE COURT:  Well, I'm not going to set another date

7  right now.  If something comes up, we can do so.  I have a

8  date obviously with Mr. Hunter.  I have a date with

9  Mr. Atkins Williams, which is up I believe on the 7th.  You

10  can be excused if you want for Ricky Brooks obviously.  So if

11  you want to be excused now, you already have your next court

12  date.

13      MR. PISSETZKY:  Okay.  Thank you, your Honor.

14      THE COURT:  All right.  Thank you.

15      MR. PISSETZKY:  So I'm here for Mr. Yancy and I'll

16  be excused.  Thank you, your Honor.

17      THE COURT:  All right.  Thank you.

18      MR. WALSH:  Judge, I had two motions that were filed

19  today.  Could we continue those to the same day as

20  Mr. Hunter, the 13th, at 1:00 o'clock?  One involves

21  transferring my client to the MCC and the other one involves

22  appointment of counsel.  They were filed this morning.

23      THE COURT:  Oh, that's why it's not in my notes.

24      MR. WALSH:  My apologies.

25      THE COURT:  No; that's fine.  That's as to Anthony

1    Williams?

2           MR. WALSH:  Yes.

3           THE COURT:  All right.  The pending motions, Gloria,

4    for Anthony Williams are going to be E&C'd, entered and

5    continued until 2-13.

6           MR. WALSH:  And that's 1:00 o'clock, right?

7           THE COURT:  1:00 o'clock, yeah.  Thank you, counsel.

8    So do you want to handle Mr. Brooks, right?

9           MS. GILKERSON:  Yes.

10          MS. BLAINE:  Yes.

11          THE COURT:  Okay.  Whenever you're ready.

12          MS. BLAINE:  Your Honor, this is a rebuttal of

13   presumption case under the Bail Reform Act.  And as you are

14   aware, the -- there's not a great amount of evidence that is

15   required to rebut the presumption.  It's any evidence

16   favorable to the defendant.

17          I have read the government's response to our motion

18   and just had a few things that I wanted to put before the

19   Court.  The first thing is a correction to the Pretrial

20   report.  Mr. Brooks has not used any of the aliases that are

21   listed in the original pretrial report that was done in July

22   of 2017.  He does not condone those aliases.  There's an

23   incorrect birth date and an incorrect Social Security number.

24   Those aliases do not belong to Mr. Brooks.

25          The second issue I wanted to bring to the Court's

1   attention is that risk of flight, it requires a serious risk,
2   not just a risk under 3142(f)(2)(A).  Mr. Brooks does have a
3   report of a -- of a stable residence in his pretrial report.
4   He has had several residences but they are all for various
5   periods of time.  He lived with his sister for approximately
6   three years.  He lived with a friend for a year and he had
7   been living with the mother of one of his children for about
8   seven months prior to his arrest in this case.  So his
9   address, while it hasn't been long-term, has been fairly
10  stable.  He doesn't move from place to place on a weekly or
11  monthly basis.  He is in a stable living situation when he --
12  before he was arrested in this matter.
13          He has also undertaken several courses while he has
14  been in the MCC.  Most significantly, he has completed the
15  drug abuse program at MCC with flying colors.  He would like
16  to continue to attend further drug treatment and would like
17  to get some mental health treatment to address some of the
18  issues that he has had with regards to losing people in his
19  life who are important to him and that is just treatment that
20  is not available at MCC.  He has kind of reached the end of
21  the road of what MCC can provide for him at this time.
22          So we are asking for him to be released on home
23  detention with the ability to go to mental health treatment
24  and drug treatment.  He also has the possible opportunity to
25  become employed.  He has a friend who owns several rental

1    properties and is looking for someone to do maintenance and

2    repairs to these properties so he could potentially become

3    employed if the Court were to allow him to be released on

4    home detention so that he could be working and have

5    employment.

6           The July Pretrial report says that he did not have

7    stable employment but, again, I disagree with that

8    assessment.  He worked several -- at several places but he

9    had -- he was there for several years at each of these

10   places.  Going backwards in time, the first place he worked

11   was at a domestic violence shelter for about two years doing

12   custodial work.  After that, he worked at a Bennigan's for

13   about two years and prior -- and the most recent employment

14   that he had was at a construction company for about four

15   years.  The only reason that employment terminated was

16   because the owner of the company passed away.  So while he

17   was unemployed at the time of his arrest in this case, he has

18   had stable employment in the past and he does have the

19   opportunity to become employed again should the Court find

20   that that is an appropriate thing for him to be doing.

21          We do believe that there are conditions that would

22   satisfy his appearance in court and I believe that home

23   detention with location monitoring, the possibility of his

24   sister as a third-party custodian.  I know that Pretrial has

25   said that they don't believe that she is an acceptable

1    third-party custodian.  I disagree with that assessment as

2    well.  Her arrests are misdemeanor cases most recent

3    occurring when she was 19 years old.  She's now 37.  I think

4    she's shown a 20-year track history of being able to stay out

5    of trouble and being able to comply with the law and make

6    sure that Mr. Brooks also complies with the law so I think

7    she would be an acceptable third-party custodian.  She's more

8    than happy to have Mr. Brooks come back to her home and live

9    with her with her and her children.

10             THE COURT:  Thank you, counsel.  Any response?

11             MS. GILKERSON:  Your Honor, I don't want to repeat

12   too much of what is already in our written response but I

13   would note that here I believe there is a strong risk of

14   non-appearance and that is based primarily on the fact that

15   this defendant evaded arrest for months following the charges

16   in this case.

17             In the Pretrial Services' report, he essentially

18   admitted that he had not stayed at a fixed residence

19   precisely because he was aware that there was an active

20   warrant out for his arrest and he did not want to be

21   discovered by law enforcement so he was in the Chicago area

22   but eluded arrest from March through July of 2017.  And, in

23   fact, finding him required an order to get location

24   information for a telephone for him and it was with that

25   information that they were finally able to make his arrest.

1   This is somebody who intentionally avoided being apprehended

2   in this case even though he was well aware of the charges

3   pending.

4           And I will note that additionally as laid out in the

5   complaint filed in this case, he during the scope of the

6   charged conspiracy had previously fled from law enforcement.

7   That was in September of 2016.  There were a series of calls

8   intercepted between Mr. Brooks and two of his co-defendants.

9   There was an observation of the meet between the two that law

10  enforcement believed was an arranged narcotics transaction.

11  Law enforcement subsequently attempted to conduct a traffic

12  stop and Mr. Brooks fled in his vehicle and was lost in

13  traffic.

14          There was a subsequent call between Mr. Brooks and

15  co-defendant Tyrone Hunter where essentially Brooks reported

16  to Hunter that the police had tried to stop him and

17  Mr. Hunter suggested that essentially the car should be

18  ditched and he shouldn't get back in the car in order to

19  further avoid detection by law enforcement.  That combined

20  with the fact that he has not had stable employment and in

21  fact admitted that for a year prior to his arrest he was

22  unemployed and then -- so he had admitted that he had no

23  employment for an entire year prior to his arrest in July of

24  2017.  And his admissions that he was intentionally moving

25  around and not maintaining a stable residence I think

1    undercut defense counsel argument that he has had stable

2    residence.  He has moved around multiple times and Pretrial

3    Services made note of the fact that he couldn't even recall

4    some of the addresses where he had lived at in the past few

5    years.  He's had multiple bond forfeitures.  He had his

6    parole revoked in 2005 and he also has admitted a history of

7    substance abuse that continued up and to the point of his

8    arrest.

9          I think there's also an argument here that he

10   presents a danger to the community.  Based upon the nature of

11   the offense, he was involved in the distribution of large

12   amounts of heroin and crack cocaine in Chicago.  He has six

13   prior drug convictions, a prior murder conviction and again

14   past drug and alcohol use.  And for those reasons, we agree

15   with Pretrial Services' recommendation that he remain

16   detained pending trial.

17         THE COURT:  Do you have any position on the alias

18   argument that defense counsel raised?

19         MS. GILKERSON:  I have only one what is in the

20   Pretrial Services' report which indicates that he had

21   previously used those aliases and had previously used a

22   different date of birth and different Social Security

23   number.

24         THE COURT:  What's your current estimate regarding

25   any potential guideline range or mandatory minimums if

1   convicted of the charges --

2           MS. GILKERSON:  Right now --

3           THE COURT:  Hang on.

4           MS. GILKERSON:  Sorry.

5           THE COURT:  -- if convicted of the charged offense?

6   Go ahead.

7           MS. GILKERSON:  He is right now, based upon the

8   charges pending, subject to a ten-year mandatory minimum

9   sentence with a maximum sentence of life.

10          THE COURT:  Anything else, counsel?

11          MS. BLAINE:  Not at this time, your Honor.

12          THE COURT:  All right.  I will rule by separate

13  written order.  In the interim, the motion is taken under

14  advisement.

15          Anything else we need to address?  Time is

16  previously excluded through and including our trial date as

17  to all defendants.  Anything else?

18          MS. GILKERSON:  Not from the government, your Honor.

19          THE COURT:  All right.  Thank you, everyone.  Thank

20  you for coming in on short notice.  Stay warm.

21          MR. FRIEDMAN:  Your Honor, I have my motion,

22  Mr. Bland's motion.

23          THE COURT:  Hang on a second.  His appearance

24  obviously was waived, counsel.

25          MR. FRIEDMAN:  Yes, your Honor.

1          THE COURT:  Go ahead, counsel.

2          MR. FRIEDMAN:  Yes, your Honor.  We have a motion up

3    to correct the PSR.  The most pressing matter is with regard

4    to the education.  I've been advised by my client, and I've

5    been trying to get through down to Grand Prairie, that he did

6    not get credit for his education, his high school graduation.

7    The PSR says in one point that he did graduate high school

8    but, on the other hand, they said they couldn't dig up the

9    transcript so they couldn't verify it so I understand he

10   didn't get the two-point credit for education.  He's being

11   shipped out shortly to a non -- not to a minimum security

12   facility.  So we submitted a motion with his transcripts and

13   asked that the PSR be amended and that those transcripts be

14   attached.

15         THE COURT:  Any objection?

16         MS. GILKERSON:  I don't have any objection, although

17   I'm wondering if this is best taken up with the Bureau of

18   Prisons at this point in time given the sensitive nature, the

19   time-sensitive nature of the request.

20         THE COURT:  Well, the PSR is going to follow him

21   through the system.  So if there is something that needs to

22   be added to the PSR, it's a simple matter of doing it.  And

23   then if they need to re-designate him, they can do that in

24   terms of the time-sensitive thing.  Just talking about the

25   merits of whether or not we should amend the PSR, is there

1   any objection to that?

2           MS. GILKERSON:  No, your Honor.

3           THE COURT:  All right.  That wasn't the only

4   correction, right, counsel?

5           MR. FRIEDMAN:  Well, there was the business about

6   the gang affiliation.  The language was a little bit --

7           THE COURT:  I already ruled on that, right --

8           MR. FRIEDMAN:  Right.

9           THE COURT:  -- at sentencing?

10          MR. FRIEDMAN:  Yeah.  I'm not sure that it came --

11  and I just ordered the transcript and I apologize, Judge, but

12  I don't believe it came out the way I recalled it.  I spoke

13  to Ms. Gilkerson.  She wasn't entirely sure to recall the

14  language.  But the way it's written, it still refers to his

15  affiliation with a gang as opposed to what I believe your

16  Honor approved was that he supplied narcotics to that gang.

17          THE COURT:  I thought we were pretty explicit.

18  What's the transcript reveal?  Do you have the transcript?

19          MR. FRIEDMAN:  I have not.  I have just ordered it,

20  Judge, and I apologize.

21          THE COURT:  All right.  Well --

22          MR. FRIEDMAN:  That can wait.  I'm sorry.  That

23  aspect of it.

24          THE COURT:  My recollection is very clear on that so

25  I know I said exactly what it was supposed to say and the

1  parties agreed to it.  So whatever language is in that

2  transcript, go ahead and submit that.  And then if you need

3  to file another motion or just talk to the government, it

4  shouldn't take a second order because I already ruled on it.

5  So if it's just a question of affecting the Court's previous

6  order, I think with respect to that, your motion is moot

7  because I already ruled.  If we need to reconcile the PSR to

8  what was ruled, then that's not -- you don't need a new

9  ruling.  So let me know if there's any problem with that and

10  I can address it if there is.

11          Otherwise, the motion will be to amend the PSR with

12  respect to the transcripts regarding the high school

13  graduation or the high school diploma will be granted without

14  objection.

15          Anything else, counsel?

16          MR. FRIEDMAN:  That's it, your Honor.  Thank you.

17          THE COURT:  All right.  Thank you so much.

18          MS. GILKERSON:  Thank you, your Honor.

19     (Which concluded the proceedings in the above-entitled

20  matter.)

21

22

23

24

25

1                    C E R T I F I C A T E

2          I hereby certify that the foregoing is a transcript

3    of proceedings before the Honorable John Robert Blakey on

4    February 5, *2019.*

5

6    */s/Laura LaCien*
                                         September 7, 2019
7    _____              Date
     Laura LaCien
     Official Court Reporter
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25